# Exhibit A

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.:

YOVANY GONZALEZ,

Plaintiff,

vs.

WELLS FARGO BANK, N.A. f/k/a/ WACHOVIA BANK, N.A.,

Defendant.

_____/

50 2012CA01 42 20 XXXXMB

Date: 8/2/12

Time: 150pr

By: CMC 45#101

AD

## S U M M O N S:

THE STATE OF FLORIDA
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant:

**Wells Fargo Bank, N.A.**
**By Serving its Registered Agent: Corporation Service Company**
**1201 Hays Street**
**Tallahassee, FL 32301-2525**

Each defendant is required to serve written defenses to the complaint or petition on Patrick E. Quinlan, Esquire, Plaintiff's attorney, whose address is Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of Court, Circuit Civil Division, , either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on August, 2012.        AUG 02 2012

SHARON R. BOCK
Clerk & Comptroller

CLERK OF THE CIRCUIT COURT (SEAL)

**KRISTIN BUTLER**

BY: _____
       Deputy Clerk

PDF created with pdfFactory trial version www.pdffactory.com



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

SKD / ALL
**Transmittal Number: 10197551**
**Date Processed: 08/08/2012**

| Primary Contact: | WF West - WF Bank<br>Corporation Service Company- Wilmington, DELAWARE<br>2711 Centerville Rd<br>Suite 400<br>Wilmington, DE 19808 |
|---|---|
| **Entity:** | Wells Fargo Bank, N.A.<br>Entity ID Number  2013649 |
| **Entity Served:** | Wells Fargo Bank, N.A. |
| **Title of Action:** | Yovany Gonzalez vs. Wells Fargo Bank, N.A. f/k/a Wachovia Bank, N.A. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Palm Beach County Circuit Court, Florida |
| **Case/Reference No:** | 50 2012 CA014220XXXXMB |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 08/07/2012 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Patrick E. Quinlan<br>561-686-6300 |
| **Client Requested Information:** | Matter Management User Groups: [LITIGATION - EMPLOYEE] |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NUMBER:

YOVANY GONZALEZ,

       Plaintiff,

vs.

WELLS FARGO BANK, N.A., f/k/a WACHOVIA BANK, N.A.

       Defendant.

_____/

**COMPLAINT**

Plaintiff, Yovany Gonzalez ("Gonzalez"), hereby sues Defendant, Wells Fargo Bank,
N.A. f/k/a Wachovia Bank, N.A. ("Wells Fargo"), and states:

**Parties/Venue/Jurisdiction**

1. This is a claim for damages in excess of Fifteen Thousand Dollars ($15,000.00),
as well as equitable relief.

2. Gonzalez is a resident of Palm Beach County, Florida.

3. Wells Fargo is a national banking association with authorized offices throughout
Florida, including in Palm Beach County.

4. Gonzalez was hired by Wachovia Bank, N.A. ("Wachovia"). Beginning in 2008,
and including the time when he was terminated and when the causes of action stated herein
accrued, Wachovia was being acquired by Wells Fargo and was known as "Wachovia, a Wells
Fargo Company." Since that time, the acquisition of Wachovia has been completed and its
banking operations are now known as "Wells Fargo Bank, N.A."

PDF created with pdfFactory trial version www.pdffactory.com

5. Venue is proper in Palm Beach County, because Wells Fargo has an agent or other representative in this County and the causes of action accrued in this County.

### Background Allegations

6. Gonzalez was hired by Wachovia in 2007 as a Mortgage Consultant. He worked at a branch located in Palm Beach County.

7. Wachovia offered Gonzalez the opportunity to obtain health insurance and life insurance for his entire family. He chose to do so. Gonzalez elected to purchase, among other things, life insurance on the lives of each of his children, on which he was named as beneficiary. The premiums for the life insurance coverage were taken out of his paychecks.

8. In December 2008, Gonzalez's daughter, Mackenzie, was diagnosed with cancer.

9. Mackenzie's treatment required Gonzalez to miss work and to relocate geographically for periods of time.

10. Gonzalez requested that he be permitted to work in other bank locations. Wells Fargo agreed.

11. During Mackenzie's treatment, Gonzalez worked irregular hours, generally less than full time, and in several different locations. On many occasions, Gonzalez was unable to record time when he was working, with bank approval, from a remote location.

12. In addition, during this timeframe, Wells Fargo changed the time entry system for its employees. One of the features of the new system was that employees could not enter time for work performed during previous time periods without the assistance of a supervisor.

13. Gonzalez requested the assistance of his supervisor, Branch Manager Shaskia Rodriguez, to help him input time.

2

PDF created with pdfFactory trial version www.pdffactory.com

14. Gonzalez made clear that he was not able to precisely account, down to the minute, for all time worked. Rodriguez told him that everything was fine, and that he should provide his best recollection of the hours. She then input the time for him.

15. In July 2010, Gonzalez learned that Mackenzie needed surgery to remove a tumor. The surgery was scheduled for the beginning of August 2010 at Sloan Kettering.

16. In mid-July 2010, Gonzalez's wife, Susan Gonzalez, was contacted by representatives of Wells Fargo and United Health Care (the health insurer), who asked numerous questions about Mackenzie's surgery and long-term care. Several references were made to the costs of her treatment.

17. In late July 2010, Ms. Rodriguez left on vacation. Before that time, she had told Gonzalez that Wells Fargo was looking for reasons to get rid of him.

18. In late July 2010, shortly after the phone calls regarding Mackenzie's surgery and long-term care, and while Ms. Rodriguez was on vacation, Gonzalez received a telephone call from a woman who identified herself as being with Wells Fargo's Security Department. She stated that she was investigating whether Gonzalez had falsified his timesheet. She accused Gonzalez of stealing from the company.

19. Gonzalez pointed out that the timesheet in question was one that Ms. Rodriguez completed for him.

20. Nonetheless, on August 3, 2010, after he had returned to Palm Beach County from travel to Jacksonville for Mackenzie's latest cancer treatment, Gonzalez was told that he was being terminated for falsification of time records. He was not asked any questions about the allegations or given any chance to explain the circumstances. Instead, Gonzalez was handed a previously-prepared termination letter, a copy of which is attached as Exhibit A. Gonzalez was

3

PDF created with pdfFactory trial version www.pdffactory.com

also handed, and asked to sign (without time to review, much less confer with counsel), a Departure Agreement and Release of Claims, already signed by a representative of Wells Fargo, which would have released all potential claims of employment discrimination. A copy of the Departure Agreement and Release of Claims is attached as Exhibit B.

21.    The Departure Agreement and Release of Claims provided: "You will receive additional information regarding continuation or conversion of certain benefits in which you participate...." He never received this information. But, during a phone conversation with a Wells Fargo representative after his termination, Gonzalez made clear that he wanted to keep in place whatever benefits he had.

22.    Wells Fargo fired Gonzalez just three days before Mackenzie's scheduled surgery. Sloan Kettering cancelled Mackenzie's surgery due to the lack of insurance coverage.

23.    During his employment at Wachovia, Gonzalez had obtained his FINRA Series 6 and Series 63 securities licenses, as well as a Florida 2-15 license. These licenses allowed Gonzalez to act as a registered securities broker.

24.    On August 24, 2010, Gonzalez was mailed a copy of the Form U5 Uniform Termination Notice for Securities Industry Registration prepared by Wells Fargo, and dated August 23, 2010, which lists the reason for termination as "DISCHARGED BY WACHOVIA BANK, NA FOR CONDUCT UNRELATED TO THE BUSINESS OF WELLS FARGO ADVISORS.  SPECIFICALLY, ENTERED INACCURATE TIME INFORMATION INTO THE FIRM'S TIME MANAGEMENT SYSTEM." The cover letter to Gonzalez explained that he had two years from his date of termination in order to become securities registered with another Broker Dealer, or else he would have to re-qualify for his securities licenses by exam. A copy of the cover letter and enclosed Form U5 is attached as Exhibit C.

4

PDF created with pdfFactory trial version www.pdffactory.com

25.   Mackenzie died of cancer on March 2, 2011.

26.   A few days later, Gonzalez called Wachovia to notify the bank of Mackenzie's death and inquire about obtaining the life insurance proceeds.

27.   Wachovia informed Gonzalez that he needed to call the insurer, Minnesota Life Insurance Company. But when he called, the Minnesota Life representative stated that the policy had been cancelled for lack of payment.

28.   Gonzalez then called back to Wachovia and related the information he had received from Minnesota Life. On April 7, 2011 – more than one month after Mackenzie's death and more than eight months after his termination – Gonzalez received a document from Wells Fargo entitled "Life Insurance, Long Term Care and Accidental Death and Dismemberment," a copy of which is attached as Exhibit D. This is a document that Wachovia had promised to send at the time of his termination. The document notified Gonzalez that "you may be eligible to continue your Life Insurance," but that he was required to contact Minnesota Life "within 31 days of your coverage end date," which by then had long since passed.

29.   Managerial-level employees of Wachovia told Gonzalez that they would like to bring him back to work, but they could not, because his termination letter stated that he was "not eligible for rehire."

30.   Gonzalez was unable to find another job until July 2011.

31.   Gonzalez was later hired by Chase Bank as a banker. He asked representatives at Chase whether the bank would sponsor him, so that he could once again be registered to sell securities. Chase declined, based on the grounds for termination listed by Wachovia on the Form U5. Gonzalez is earning less at Chase than he would with a securities registration. And he is facing the need to re-take the examinations for his securities licenses.

5

PDF created with pdfFactory trial version www.pdffactory.com

32. On August 3, 2011, Gonzalez's counsel delivered a Technical Assistance Questionnaire ("TAQ") to the Florida Commission on Human Relations (the "Commission"). The TAQ charged that Wachovia "terminated my employment because the treatments and expenses may have cost the company a considerable amount of money." This allegation was repeated in an Employment Charge of Discrimination.

33. The Commission accepted the TAQ as constituting a valid complaint that named the employer and described the violation. The Commission has consistently treated August 3, 2011 as the date of filing. For example, the Commission's "180 day letter," issued February 6, 2012, expressly states: "Filing Date: 8/3/2011." See Exhibit E.

34. During its investigation, the Commission interviewed a Wells Fargo representative who admitted that (i) employees were watching Gonzalez and reporting back to her about his activities, and (ii) Branch Manager Rodriguez was surprised by the allegation of falsification.

35. Other Wells Fargo employees told Gonzalez that they were "in the same boat" as Gonzalez with regard to having issues with the new time entry system, that they had occasional inaccuracies, and that Ms. Rodriguez helped them with time entry. But these other employees did not have co-workers watching them and reporting to management, had not been accused of falsification of time records, and were not terminated by the company.

36. On April 11, 2012, the Commission issued a formal "Determination: Cause," having concluded that "reasonable cause exists to believe that an unlawful employment practice occurred." A copy of the Determination: Cause is attached as Exhibit F.

37. The Determination: Cause expressly noted that "the timeliness and all jurisdictional requirements have been met."

6

PDF created with pdfFactory trial version www.pdffactory.com

38. Gonzalez has satisfied all conditions precedent to suit.

39. Gonzalez has retained the undersigned law firm and agreed to pay a reasonable fee for services rendered.

### Count I – Discrimination in Violation of the Florida Civil Rights Act

40. Gonzalez realleges paragraphs 1 through 39.

41. Wells Fargo terminated Gonzalez to avoid the need to further accommodate him in light of his daughter's illness and to avoid incurring additional expense associated with her treatment.

42. Wells Fargo's stated justification for the termination – that Gonzalez had falsified his timesheets – was a mere pretext.

43. By terminating Gonzalez because of his daughter's disability, Wells Fargo engaged in associational disability discrimination, in violation of the Florida Civil Rights Act.

44. Gonzalez filed a complaint with the Commission within 365 days of the violation, naming the employer and describing the violation.

45. The Commission determined that there was reasonable cause to believe that a discriminatory practice occurred.

46. As a direct and proximate result of Wells Fargo's associational disability discrimination, Gonzalez has suffered damages including, but not limited to, lost wages, mental anguish, loss of dignity, and other intangible injuries.

WHEREFORE, Gonzalez asks that this Court enter judgment against Wells Fargo for compensatory damages, pre-judgment interest, punitive damages, attorneys' fees, and costs, issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay, and award such further relief as may be just.

7

PDF created with pdfFactory trial version www.pdffactory.com

## Count II – Defamation

47. Gonzalez realleges paragraphs 1 through 39.

48. Gonzalez is a private figure.

49. Wells Fargo filed the Form U5 with the regulatory body FINRA, which constitutes publication.

50. Wells Fargo has filed a Form U5 that (a) states that Gonzalez was discharged, rather than permitted to resign or otherwise terminated, and (b) accuses Gonzalez of theft, a crime of dishonesty, by claiming that he entered inaccurate time. The Form U5 amounts to a direct attack on Gonzalez's personal and professional character.

51. The Form U5 is false.

52. Wells Fargo has acted intentionally, or at least negligently, in filing the Form U5.

53. The Form U5 is defamatory per se.

54. The Form U5 would tend to prejudice Gonzalez in the eyes of the community.

55. More than five days before filing this suit, Gonzalez demanded that Wells Fargo retract its Form U5, but Wells Fargo has refused to do so.

56. The false allegation of misconduct in the Form U5 has caused Gonzalez injury in his business relations, as it prevented him from being registered to sell securities through another broker-dealer.

57. As a direct and proximate result of Wells Fargo's filing a defamatory Form U5, Gonzalez has suffered damages including damage to his reputation, personal humiliation, and mental anguish and suffering, and lost income.

WHEREFORE, Gonzalez asks that this Court enter judgment against Wells Fargo for compensatory damages, pre-judgment interest, and costs, direct Wells Fargo to withdraw the defamatory Form U5, and award such further relief as may be just.

8

PDF created with pdfFactory trial version www.pdffactory.com

## Count III – Breach of Fiduciary Duty

58.     Gonzalez realleges paragraphs 1 through 39.

59.     A relation of trust and confidence existed between Gonzalez and Wells Fargo with regard to Gonzalez's benefits and the options available to him upon termination. Confidence was reposed by Gonzalez and a trust accepted by Wells Fargo.

60.     Wells Fargo, in fact, specifically represented that it would send Gonzalez information regarding continuation or conversion of the benefits in which he participated. It eventually did so, but long after the life insurance policies had been cancelled for nonpayment.

61.     Under the circumstances, Wells Fargo owed Gonzalez a fiduciary duty, which includes the duty of loyalty, the duty of good faith and fair dealing, and the duty of care.

62.     Wells Fargo breached its fiduciary duty by failing to timely inform Gonzalez of his options regarding the life insurance policies, after Gonzalez specifically notified Wells Fargo that he wanted to keep in place whatever benefits he had.

63.     As a direct and proximate result of Wells Fargo's breach of fiduciary duty, Gonzalez has suffered damages, including the loss of the life insurance policy insuring Mackenzie's life, and thus the proceeds that would have been paid upon her death.

WHEREFORE, Gonzalez asks that this Court enter judgment against Wells Fargo for compensatory damages, pre-judgment interest, and costs, direct Wells Fargo to arrange for the reinstatement of all life insurance policies that were in place when Gonzalez was terminated or the procurement of replacement policies with equivalent or superior benefits, and award such further relief as may be just.

9

PDF created with pdfFactory trial version www.pdffactory.com

## Demand for Jury Trial

Gonzalez hereby demands trial by jury of all issues so triable.

DATED this 2nd day of August, 2012.

JACK SCAROLA
Florida Bar No.: 169440
PATRICK E. QUINLAN
Florida Bar No.: 750263
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9465
Attorney for Plaintiff Gonzalez

10

PDF created with pdfFactory trial version www.pdffactory.com



**WACHOVIA**

A Wells Fargo Company

Wachovia
26344-095
450 S. Australian Ave
West Palm Beach, FL 33401

Tel (561) 366-5500
Fax (561) 366-5502

August 3, 2010

Mr. Yovany Gonzalez
6187 Indian Forest Circle
Lake Worth, Florida   33463

Dear Yovany,

We have reviewed your conduct regarding falsification of Webtime, Wells Fargo's time reporting tool. The time you entered into Webtime differs from that of visual and DVR observation. This is a violation of Wells Fargo's Code of Ethics and Business Conduct.

Based on the violation listed above we will terminate your employment with Wells Fargo effective August 3, 2010, and you are not eligible for rehire.

If you have questions or wish to respond to this notice, contact HR Advisor at 866-649-9589.
- Your HR contact will listen to your dispute, review the matter and provide you with their determination.
- If you continue to dispute the decision, you can escalate your dispute to Employee Relations who will determine whether a further review is warranted.
- If you have any questions regarding your final pay or benefits, please contact the HR Service Center at 877-479-3557.

As for verification of your employment for future employment opportunities, you will need to instruct a prospective employer to call 800-888-8579 or online at www.vjsus.com where they will be able to verify basic employment information - your employment status, dates of employment, and job title. The Wells Fargo company code for such inquiries is 7950. If your prospective employer needs to verify salary information also, you must first call 877-479-3557 option 6 to obtain a 'salary pin'. This additional step helps us ensure that your salary information is released only at your request.

We wish you the best in your future endeavors.

Sincerely,

Joey Davis
Community Banking District Manager

Cc: Official Personnel File

PDF created with pdfFactory trial version www.pdffactory.com



Wachovia
26344-095
450 S. Australian Ave
West Palm Beach, FL 33401

**WACHOVIA**   Tel (561) 366-5500
Fax (561) 366-5502

A Wells Fargo Company

# DEPARTURE AGREEMENT AND RELEASE OF CLAIMS

This Departure Agreement and Release of Claims is made between Yovany Gonzalez (hereinafter "you" or "your") and Wachovia Bank, a Wells Fargo Company. ("Wells Fargo").

WHEREAS, your employment with Wells Fargo will end effective August 3, 2010; and

WHEREAS, by signing this Departure Agreement, Wells Fargo has agreed to pay you a lump sum payment, to amicably resolve disputes between you and Wells Fargo arising out of your employment.

NOW, THEREFORE, in consideration of the provisions of this Agreement, you and Wells Fargo do mutually agree as follows:

1) **Release of All Claims**

In consideration of the Payment and other terms and benefits described in this Agreement, to which you are not otherwise entitled, you hereby release, Wachovia Bank, NA, a Wells Fargo Company., its parent companies, predecessors, successors, affiliates, subsidiaries, employees, officers, agents, and directors (the "Company") from all claims, liabilities, demands and causes of action, known or unknown, likely or unlikely, which you may have or claim to have against the Company, as a result of your employment with or separation from employment. This includes, but is not limited to, claims for wrongful termination, constructive discharge, termination in violation of public policy, claims for compensation or any other monies allegedly due to you from Company, claims for severance pay or benefits pursuant to the Wells Fargo & Company Salary Continuation Pay Plan, claims for breach of express or implied contract, any tort of any nature, claims for discrimination or harassment based on age, sex, race, religion, pregnancy, marital status, national origin, sexual orientation, and/or disability arising under federal, state, local, or common law, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act ("ADEA"), the Civil Rights Act of 1991, the Older Workers Benefit Protection Act, the Worker Adjustment and Retraining Notification Act ("WARN"), the Americans with Disabilities Act, the Family and Medical Leave Act, the Equal Pay Act and/or all state and local human or civil rights statutes.

Likewise, the Company hereby releases you, and your relatives, heirs, beneficiaries, successors, and agents from any and all claims, liabilities, demands, and causes of action, known or unknown, likely or unlikely, which Company may have or claim to have against you as a result of your employment with or separation from employment.

This release does not extend to claims which as a matter of law cannot be waived, including, but not limited to pending unemployment insurance claims, pending workers compensation claims, or claims for your vested interest in any employee benefit plan maintained by the Company. This release also does not waive rights or claims which may arise after the date this Agreement is signed.

1



PDF created with pdfFactory trial version www.pdffactory.com

## 2) Right of Revocation

You may revoke the above Release within seven (7) days of the date on which you sign this Agreement. If you exercise this right of revocation, you acknowledge and understand you will not be entitled to any of the payments described herein. Should you choose to revoke, in order for it to be effective, the revocation must be in writing and must be mailed, certified mail, return receipt requested to: Todd J. Hooper, Senior Counsel, Wells Fargo Law Department, 301 S. College Street, D1053-310, Charlotte, NC 28202-6000.

## 3) Payment

Your employment with Wells Fargo will end effective August 3, 2010 ("Departure Date"). Wells Fargo will provide you with a lump sum payment of Twenty-five Thousand Two Hundred Forty Dollars and Ninety-three cents ($25,240.93), less taxes and required deductions, upon your execution of this Agreement and upon the expiration of the revocation period outlined above.

## 5) Benefits Coverage after Departure Date

You will receive additional information regarding continuation or conversion of certain benefits in which you participate, shortly after your Departure Date. You agree to contact the HR Service Center at 1-877-HRWELLS with questions regarding benefits. You understand that you will not receive additional information regarding stock options following your Departure Date. If you have questions about stock options, if applicable, you agree to refer to the award term sheet(s) and prospectus(es) covering such stock options. If you continue to have questions about stock options, you agree to call Wells Fargo's Stock Option Hotline at (415) 396-3948.

## 6) Confidentiality, Non-Disparagement and Non-Disclosure

a)       You agree to treat the fact and terms of this Agreement as strictly confidential. This means that you will not, unless required by law to do so, reveal any of the terms of the Agreement, the amounts referred to in this Agreement, or the fact of the payment of said amounts, to any person except your spouse, if applicable, attorney or tax preparer or other professional advisors to whom the disclosure is necessary for the purposes for which you have consulted such professional advisors. Wells Fargo shall not disclose the terms of this Agreement and release outside the management and human resources individuals with a need to know, except to its attorneys, accountants (internal and external), tax preparers, or as may be required by law.

b)       You agree not to express any derogatory or damaging statements about Wells Fargo, the management of Wells Fargo, or the business condition of Wells Fargo in any public way or to anyone who could make these statements public. Likewise, Wells Fargo agrees that its executives and officers who have actual knowledge of the terms and provisions of this Agreement will not express any derogatory or damaging statements about you in any way or to anyone who could make these statements public.

c)       You agree that you shall not disclose to any person or entity at any time or in any manner, directly or indirectly, any information relating to the operations of Wells Fargo which has not already been disclosed to the general public. This includes but is not limited to the following information: all information about employees or former employees, all product information, all information relating to Wells Fargo's strategic business or marketing plans, proprietary information and/or trade secrets; customer lists and/or names; product and service prices; customer charges; contracts; contract negotiations; and employee relations matters.

## 7) Return of Equipment

2

PDF created with pdfFactory trial version www.pdffactory.com

Unless otherwise noted in this Agreement, you shall immediately return all Wells Fargo property and information within your possession. Such property includes, but is not limited to credit cards, computers, copy machines, facsimile machines, lap top computers, cellular telephones, pagers, entry cards, keys, building passes, computer software, manuals, journals, diaries, files, lists, codes, documents, correspondence, and methodologies particular to Wells Fargo and any and all copies thereof. Moreover, you are strictly prohibited from making copies, or directing copies to yourself through e-mail or other transmission, of any Wells Fargo property covered by this paragraph.

8) Reasonable Requests

As part of this Agreement, you will be expected to respond to all reasonable requests for advice and consultation regarding business matters on which you have knowledge or information arising from your employment with Wells Fargo. In addition, you agree to provide information of which you are aware about Wells Fargo business and/or workplace matters, and to cooperate in litigation in which Wells Fargo is a named party by providing information relevant to the circumstances surrounding such litigation and/or testifying as a witness, as requested by Wells Fargo or its legal counsel.

9) Non-Solicitation of Customers and Employees

As part of this Agreement, you further agree that for a period of one year following your Departure Date, you will not interfere with the Company's business by directly or indirectly soliciting an employee to leave the Company's employ, by inducing a consultant to sever the consultant's relationship with the Company, or by directly or indirectly soliciting business from any of the Company's clients, customers, or prospective customers whose identity became known to you during your employment with the Company. This one-year limitation is not intended to limit the Company's right to prevent misappropriation of its proprietary and confidential information beyond the one-year period.

10) Employment Verification

It is further agreed that in the event Wells Fargo receives a request concerning your employment with Wells Fargo, Wells Fargo will verify only dates of employment and job titles unless required by law to provide any additional information or unless you authorize Wells Fargo to provide additional information. You understand that you will direct anyone seeking to verify your employment with Wells Fargo to call 1-877-479-3557 (option #6) for employment verification information.

11) Entire Agreement

Except as specifically included by reference, this Agreement contains the entire agreement between you and Wells Fargo. Any modification to the provisions in this Agreement must be in writing and be signed by both you and Wells Fargo, provided however, that the payment dates described in this Agreement may not be accelerated for any reason.

12) Compliance with Internal Revenue Code Section 409A.

Notwithstanding the Entire Agreement provision, to the extent that the compensation and benefits payable under this Departure Agreement are subject to Internal Revenue Code Section 409A, you agree that Wells Fargo will adhere to the provisions of Internal Revenue Code Section 409A and any Treasury Regulations or other guidance issued thereunder. Prior to signing this Agreement, you state that you have been advised to seek the advice of legal and/or tax counsel with respect to the tax issues associated with the payment of the compensation and benefits under this Agreement. You further agree that Wells Fargo will not be responsible for any adverse tax consequences experienced by you in connection with Wells Fargo's execution of its obligations under this Agreement.

3

PDF created with pdfFactory trial version www.pdffactory.com

13) Governing Law

Florida law shall govern the validity and interpretation of this Agreement. The Parties stipulate that jurisdiction shall be exclusively in the State of Florida for any action involving the validity, interpretation, or enforcement of this Agreement, for damages, or for any other relief brought under this Agreement.

14) Enforcement

If you violate any portion of this Agreement or later challenge the validity of the terms of this Agreement, Wells Fargo will be entitled to pursue its legal and equitable remedies, including without limitation the right to withhold payment of any unpaid amounts due hereunder, to recover damages and to seek injunctive relief.

15) Severability

In case one or more of the provisions of this Agreement should be deemed invalid, illegal or unenforceable, in any respect, the validity, legality and enforceability of all of the remaining provisions contained herein will not in any way be affected or impaired.

16) Successor in Interest

This Agreement shall be binding upon the Parties hereto and upon their heirs, administrators, representatives, executors, successors, and shall inure to the benefit of said Parties and each of them and their heirs, administrators or representatives, executors, and successors.

17) Time for Review

You state that prior to signing this Agreement, you were given a period of five (5) days after receiving it to consider its terms before signing it and time to review it with legal counsel.

18) Signatures and Photocopies

This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Photographic copies of any such counterparts may be used in lieu of the originals for any purpose.

Date: _____

Date: _2/3/10_

_____
Yovany Gonzalez

Wachovia Bank, a Wells Fargo Company

By: _____
Frank Newman III
Regional President

4

PDF created with pdfFactory trial version www.pdffactory.com

Wells Fargo Advisors, LLC
3C0103
401 South Tryon Street
9th Floor
Charlotte, NC 28202-0103

Tel 704-374-7965
Fax 704-374-2705



August 24, 2010

Yovany Gonzalez
6187 Indian Forest Circle
Lake Worth, FL 33463

RE: Form U-5 Termination Notice

Dear Mr. Gonzalez:

Your securities registration through Wells Fargo Advisors, LLC Wealth Brokerage Services has been terminated. Attached is a copy of the Form U-5 Termination Notice that was filed with the regulators on your behalf.

Please note that you will have two years from your date of termination in order to become securities registered with another Broker Dealer. Failure to become registered within the two year period will result in your having to re-qualify for your securities license(s) by exam.

You will be responsible for keeping the regulators informed on any changes in your residential address. You must do this by writing to the FINRA at the below listed address. Please include your full name, social security number/crd number, date moved from old residence, date moved to new residence and full address of current residence.

NASAA/FINRA Central Registration Depository
P.O. Box 9495
Gaithersburg, MD 20898-9495

Sincerely,

Henry Sale
WFA LLC, Registration Dept.
Registration Associate

enclosures

Investment and Insurance Products:   > NOT FDIC Insured   > No Bank Guarantee   > MAY Lose Value

Wells Fargo Advisors, LLC, Member FINRA/SIPC, is a registered broker-dealer and separate non-bank affiliate of Wells Fargo & Company. Insurance products are offered through our affiliated non-bank insurance agencies.

PDF created with pdfFactory trial version www.pdffactory.com

# FORM U5
## UNIFORM TERMINATION NOTICE FOR SECURITIES INDUSTRY REGISTRATION

U5 - FULL 08/23/2010                                                      Rev. Form U5 (05/2009)

Individual Name: GONZALEZ, YOVANY (5361399)

Firm Name: WELLS FARGO ADVISORS, LLC (19616)

### NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING

Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.

### 1. GENERAL INFORMATION

| First Name: YOVANY | Middle Name: | Last Name: GONZALEZ | Suffix: |
|---|---|---|---|
| Firm CRD #: 19616 | Firm Name: WELLS FARGO ADVISORS, LLC | Firm NFA #: | |
| Individual CRD #: 5361399 | Individual SSN: 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 | Individual NFA #: | Firm Billing Code: 850-LFS |

Office of Employment Address

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 87353 | 4850-3E | 850 | 450 AUSTRALIAN AVENUE WEST PALM BEACH , FL 33401 UNITED STATES | N | Located At | 06/14/2007 | 12/02/2007 |
| 86113 | 4850-59 | 850 | 802 SOUTHERN BOULEVARD WEST PALM BEACH , FL 33405 UNITED STATES | N | Located At | 12/03/2007 | 02/25/2008 |
| 86110 | 4850-2D | 850 | 4300 FOREST HILL BOULEVARD WEST PALM BEACH , FL 33406 UNITED STATES | N | Located At | 02/25/2008 | 11/16/2009 |
| 87353 | 4850-3E | 850 | 450 AUSTRALIAN | N | Supervised | 02/25/2008 | 08/03/2010 |

https://crd.finra.org/frm/u4u5/CRD_FRM_U4U5ViewHist.aspx?FR=0&RefNum=...    8/24/2010 Henry

PDF created with pdfFactory trial version www.pdffactory.com

| | | | AVENUE | | From | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | WEST PALM BEACH, FL 33401 UNITED STATES | | | | | | |
| 86109 | 4850-58 | 850 | 303 BANYAN BOULEVARD | N | Located At | 11/16/2009 | 08/03/2010 |
| | | | WEST PALM BEACH, FL 33401 UNITED STATES | | | | | | |

## 2. CURRENT RESIDENTIAL ADDRESS

### NOTICE TO THE FIRM

*This is the last reported residential address. If this is not current, please enter the current residential address.*

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 05/2010 | PRESENT | 6187 INDIAN FOREST CIRCLE | LAKE WORTH | FL | USA | 33463 |

## 3. FULL TERMINATION

Is this a *FULL TERMINATION?* ⦿ Yes ◯ No
Note: A "Yes" response will terminate ALL registrations with all *SROs* and all *jurisdictions.*

**Reason for Termination:** Discharged

**Termination Explanation:**
If the Reason for Termination entered above is Permitted to Resign, Discharged or Other, provide an explanation below:

DISCHARGED BY WACHOVIA BANK, NA FOR CONDUCT UNRELATED TO THE BUSINESS OF WELLS FARGO ADVISORS. SPECIFICALLY, ENTERED INACCURATE TIME INFORMATION INTO THE FIRM'S TIME MANAGEMENT SYSTEM.

## 4. DATE OF TERMINATION

**Date Terminated (MM/DD/YYYY):** 08/03/2010
A complete date of termination is required for *full termination.* This date represents the date the *firm* terminated the individual's association with the *firm* in a capacity for which registration is required.

For *partial termination,* the date of termination is only applicable to post-dated termination requests during the renewal period.

Notes: For *full termination,* this date is used by *jurisdictions/SROs* to determine whether an individual is required to requalify by examination or obtain an appropriate waiver upon reassociating with another *firm.*

PDF created with pdfFactory trial version www.pdffactory.com

The *SRO/jurisdiction* determines the effective date of termination of registration.

## 6. AFFILIATED FIRM TERMINATION

No Information Filed

## 7. DISCLOSURE QUESTIONS

**IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS "YES", COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U4 OR FORM U5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.**

Disclosure Certification Checkbox (optional): ☑

By selecting the Disclosure Certification Checkbox, the firm certifies that (1) there is no additional information to be reported at this time; (2) details relating to Questions 7A, 7C, 7D and 7E have been previously reported on behalf of the individual via Form U4 and/or amendments to Form U4 (if applicable); and (3) updated information will be provided, if needed, as it becomes available to the firm. Note: Use of "Disclosure Certification Checkbox" is optional.

### Investigation Disclosure

| | | YES | NO |
|---|---|---|---|
| 7A. | Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? (Note: Provide details of an *investigation* on an Investigation Disclosure Reporting Page and details regarding a *proceeding* on a Regulatory Action Disclosure Reporting Page.) | ◌ | ◌ |

### Internal Review Disclosure

| | | YES | NO |
|---|---|---|---|
| 7B. | Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct? | ◌ | ◌ |

### Criminal Disclosure

| | | | YES | NO |
|---|---|---|---|---|
| 7C. | While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual: | | | |
| | 1. | convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*? | ◌ | ◌ |
| | 2. | *charged* with any *felony*? | ◌ | ◌ |
| | 3. | convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ◌ | ◌ |
| | 4. | *charged* with a *misdemeanor* specified in 7(C)(3)? | ◌ | ◌ |

### Regulatory Action Disclosure

| | | YES | NO |
|---|---|---|---|
| | | | |

PDF created with pdfFactory trial version www.pdffactory.com

7D. While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual involved in any *disciplinary action* by a domestic or foreign governmental body or *self-regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses?                                                                    ⊙  ⊙

### Customer Complaint/Arbitration/Civil Litigation Disclosure

|                                                                                  | YES | NO |
|----------------------------------------------------------------------------------|-----|-----|

7E. 1. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which:

    (a) is still pending, or;                                                    ⊙  ⊙

    (b) resulted in an arbitration award or civil judgment against the individual, regardless of amount, or;                                          ⊙  ⊙

    (c) was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;        ⊙  ⊙

    (d) was settled, on or after 05/18/2009, for an amount of $15,000 or more?        ⊙  ⊙

  2. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated (written or oral) complaint, which alleged that the individual was *involved* in one or more *sales practice violations*, and which

    (a) was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;        ⊙  ⊙

    (b) was settled, on or after 05/18/2009, for an amount of $15,000 or more?        ⊙  ⊙

  3. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7(E)(2) above, which:

    (a) would be reportable under question 14I(3)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or          ⊙  ⊙

    (b) would be reportable under question 14I(3)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.          ⊙  ⊙

### Answer questions (4) and (5) below only for arbitration claims or civil litigation filed on or after 05/18/2009

  4. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, arbitration claim or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations*, and which:

    (a) was settled for an amount of $15,000 or more, or;        ⊙  ⊙

    (b) resulted in an arbitration award of civil judgment against any named respondent (s)/defendant(s), regardless of amount?          ⊙  ⊙

  5. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, arbitration claim or civil litigation not otherwise reported under question 7E(4) above, which:

    (a) would be reportable under question 14I(5)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or          ⊙  ⊙

    (b) would be reportable under question 14I(5)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the          ⊙  ⊙

PDF created with pdfFactory trial version www.pdffactory.com

individual's Form U4 by your *firm*.

## Termination Disclosure

|  |  | YES | NO |
|---|---|---|---|

7F. Did the individual voluntarily *resign* from your *firm*, or was the individual discharged or permitted to *resign* from your *firm*, after allegations were made that accused the individual of:

1. violating *investment-related* statutes, regulations, rules or industry standards of conduct?                                                                                                       ◌  ◌

2. fraud or the wrongful taking of property?                                                                                     ◌  ◌

3. failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?                                                                      ◌  ◌

## 8. SIGNATURE

Please Read Carefully

All signatures required on this Form U5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A. FIRM ACKNOWLEDGMENT
This section must be completed on all U5 form filings submitted by the *firm*.

8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT
This section must be completed on amendment U5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

### 8A. FIRM ACKNOWLEDGMENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

| Person to contact for further information | Telephone # of person to contact |
|---|---|
| GARY LIDDICOAT | 314-955-2155 |

| Signature of *Appropriate Signatory* | Date (MM/DD/YYYY) |
|---|---|
| LORI SELLERS | 08/23/2010 |
| Signature *[signature] for Lori Sellers* | |

## CRIMINAL DRP

No Information Filed

## CUSTOMER COMPLAINT/ARBITRATION/CIVIL LITIGATION DRP

No Information Filed

## INTERNAL REVIEW DRP

No Information Filed

## INVESTIGATION DRP

PDF created with pdfFactory trial version www.pdffactory.com

No Information Filed

**REGULATORY ACTION DRP**

No Information Filed

**TERMINATION DRP**

No Information Filed

Privacy    Legal    Use of Web CRD® or IARD™ is governed by the  Terms & Conditions.

©2011 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.

https://crd.finra.org/frm/ind/u5/CRD_FRM_U4U5ViewHist.aspx?ER=0&RefNum=    8/24/2010 Henry

PDF created with pdfFactory trial version www.pdffactory.com



## Life Insurance, Long Term Care and Accidental Death and Dismemberment Plans

As a team member who may be eligible for COBRA or retiree benefits, you may be eligible to continue your Life Insurance, Long-Term Care, and Accidental Death and Dismemberment (AD&D) coverage through options listed below. When insurance has a portability feature, you may be able to keep your coverage by paying premiums directly to the insurance carrier, and when it has a conversion feature, you may be able to keep your coverage by converting it to a personal policy.

NOTE: If you elect COBRA over retiree benefits coverage and port your life insurance coverage, your port rates will be higher compared to retiree port rates.

- For Basic, Optional, Spouse/Partner and/or Dependent Term Life Insurance plans, please contact Minnesota Life at 1-877-822-8308 within 31 days of your coverage end date to request, complete, and return the portability or conversion form.

  ### Minnesota Residents Only

  Under the Minnesota Continuation Law, you may be eligible to continue your group coverage in Basic, Optional, Spouse/Partner, and Dependent Term Life coverage. If eligible, you may elect an amount up to or equal to the amount of coverage in effect on the date your coverage ends, for a period of up to 18 months. To apply for continuation of life insurance coverage, you must contact Minnesota Life at 1-877-822-8308 within 60 days of receipt of this notice. Contact Minnesota Life at 1-877-822-8308 for more information on your continuation option and the corresponding cost. When your continuation ends, you may still continue your coverage through portability or conversion.

- For Long-Term Care Insurance, please contact CNA at 1-800-932-1132 within 31 days of your coverage end date.

- For Accidental Death and Dismemberment (AD&D) Insurance, please contact the HR Service Center at 1-877-HRWELLS (1-877-479-3557), option 2, 3, 1, within 31 days of your coverage end date to request, complete, and send the conversion form to Life Insurance Company of North America (LINA), a CIGNA company.

If you have any questions or need additional information about continuing your insurance coverage through your COBRA or retirement benefits, please contact the Retirement and COBRA Service Center at 1-800-377-9220.

© 2010 Wells Fargo Bank, N.A. All rights reserved.

PDF created with pdfFactory trial version www.pdffactory.com



# State of Florida
# Florida Commission on Human Relations
An Equal Opportunity Employer •Affirmative Action Employer



2009 Apalachee Parkway • Suite 100 • Tallahassee, Florida 32301-4857
(850) 488-7082
http://fchr.state.fl.us

Rick Scott
Governor

Gilbert Singer
Chair
Michelle Wilson
Executive Director

February 6, 2012

Mr. Yovany Gonzalez
6187 Indian Forest Circle
Lake Worth, FL 33463

Re: FCHR No. 201102234

Dear Mr. Gonzalez:

The records of the Florida Commission on Human Relations (Commission) indicate that more than 180 days have elapsed since you filed your complaint of discrimination. Although your complaint remains pending with this agency, the Commission has not yet completed the investigation in your case.

Since your complaint has been pending with the Commission for more than 180 days, you are advised that you have the following options:

(a) File a civil action in a court of competent jurisdiction;
(b) File a petition to have your case heard by an Administrative Law Judge
of the Florida Division of Administrative Hearings (DOAH);
(c) Withdraw your case if you no longer wish to pursue this matter
for any reason or you have resolved your case; or
(d) Allow the Commission to continue with the processing, investigation
and final action in this matter.

Should you elect option (a), which provides you the opportunity to file a civil action in a court of competent jurisdiction, you have four years from the alleged harm to commence a civil action under the Florida Civil Rights Act of 1992, (see Joshua v. City of Gainesville, 768So.2d 432 (Fla. 2000).

Should you elect option (b), which provides you the opportunity to file a petition to have your case heard by an Administrative Law Judge of the Florida Division of Administrative Hearings, you have from the 181st day of filing the complaint through 35 days after the date of the issuance of the "reasonable cause" determination to file the petition. Wilson v Scotty's, Inc., Order No. 98-032 (FCHR December 30, 1998). A Petition for Relief form must be completed before proceeding to the Division of Administrative Hearings (DOAH). Please contact your assigned Investigator or the Office of Customer Service and the form will be mailed to you.

## COMMISSIONERS

Gayle Cannon
*Lake City*

James Johns
*Jacksonville Beach*

Joanna Sharp
*Wellington*

Dr. Donna Elam
*Orlando*

Michael Keller
*Tampa*

Gilbert M. Singer, *Chairman*
*Tampa*

Dr. Onelia Fajardo
*Miami*

Michell Long
*Jacksonville*

Billy Whitefox Stall
*Panama City*

Dr. Elena Flom
*Cocoa Beach*

Lizzette Romano
*West Palm Beach*

Mario Valle, *Vice Chairman*
*Naples*

PDF created with pdfFactory trial version www.pdffactory.com



# State of Florida
# Florida Commission on Human Relations
An Equal Opportunity Employer •Affirmative Action Employer



Rick Scott
Governor

2009 Apalachee Parkway • Suite 100 • Tallahassee, Florida 32301-4857
(850) 488-7082
http://fchr.state.fl.us

Gilbert Singer
Chair
Michelle Wilson
Executive-Director

Yovany Gonzalez
February 6, 2012
FCHR No. 201102234

Page Two

Should you elect option (c), specifying that you wish to withdraw your case, we will close your case and take no further action.

Should you elect option (d), we will continue with the processing, investigation and final action in this matter.

It is recommended that you consult with an attorney of your choice to help you decide which course of action to take.

Please complete the enclosed form by checking the appropriate line, then sign, date and send back to the Commission by February 20, 2012.

**You are advised that it is unlawful for anyone to coerce, threaten or intimidate you regarding the pursuit of rights protected under federal and state anti-discrimination laws.**

The time frames for your case are as follows:   Filing date: 8/3/2011
Date of harm: 8/3/2010
Four years: 8/3/2014

If you have any general questions concerning this matter, please contact your assigned investigator at (727) 289-3064.

Sincerely,


Jennifer Morrison
Investigator


## COMMISSIONERS

| | | | |
|---|---|---|---|
| Gayle Cannon<br>*Lake City* | Dr. Donna Elam<br>*Orlando* | Dr. Onelia Fajardo<br>*Miami* | Dr. Elena Flom<br>*Cocoa Beach* |
| James Johns<br>*Jacksonville Beach* | Michael Keller<br>*Tampa* | Michell Long<br>*Jacksonville* | Lizzette Romano<br>*West Palm Beach* |
| Joanna Sharp<br>*Wellington* | Gilbert M. Singer, *Chairman*<br>*Tampa* | Billy Whitefox Stall<br>*Panama City* | Mario Valle, *Vice Chairman*<br>*Naples* |

PDF created with pdfFactory trial version www.pdffactory.com



· *State of Florida*
# Florida Commission on Human Relations
*An Equal Opportunity Employer • Affirmative Action Employer*



**Rick Scott**
*Governor*

2009 Apalachee Parkway • Suite 100 • Tallahassee, Florida 32301-4857
(850) 488-7082
http://fchr.state.fl.us

**Gilbert Singer**
*Chair*
**Michelle Wilson**
*Executive Director*

FCHR No. 201102234
Certified Receipt #: 91710821333939244436028

Yovany Gonzalez                                                  Complainant
c/o Arthur Schofield, Esquire
ARTHUR T. SCHOFIELD, P.A.
Via Jardin,
330 Clematis Street, Suite 207
West Palm Beach, FL 33401

Wachovia/Wells Fargo                                            Respondent
c/o Mr. Steven Siegel, Esquire
Fisher & Phillips, LLP
450 East Las Olas Blvd.
Fort Lauderdale, FL 33301

## DETERMINATION: CAUSE

Complainant filed a Complaint of Discrimination alleging that Respondent discriminated against him/her in violation of the Florida Civil Rights Act of 1992, as amended, Section 760.10, Florida Statutes. The Florida Commission on Human Relations has investigated this matter and has found the following:

Respondent is an employer within the meaning of the Florida Civil Rights Act of 1992, and the timeliness and all jurisdictional requirements have been met;

Pursuant to Rule 60Y-5.004(1), Florida Administrative Code, the Office of Employment Investigations has submitted an Investigative Memorandum;

On the basis of the report and recommendation, pursuant to the authority delegated to me by Rules 60Y-2.004(2)(e) and 60Y-5.004, Florida Administrative Code, I have determined that reasonable cause exists to believe that an unlawful employment practice occurred.

Michelle Wilson
Executive Director

Dated: 4-11 , 20 12

Filed: 4-11 , 20 12

By: _____
Clerk of the Commission

---

### COMMISSIONERS

| | | | |
|---|---|---|---|
| **Gayle Cannon**<br>*Lake City* | **Dr. Donna Elam**<br>*Orlando* | **Dr. Onelia Fajardo**<br>*Miami* | **Dr. Elena Flom**<br>*Cocoa Beach* |
| **James Johns**<br>*Jacksonville Beach* | **Michael Keller**<br>*Tampa* | **Michell Long**<br>*Jacksonville* | **Lizzette Romano**<br>*West Palm Beach* |
| **Joanna Sharp**<br>*Wellington* | **Gilbert M. Singer, Chairman**<br>*Tampa* | **Billy Whitefox Stall**<br>*Panama City* | **Mario Valle, Vice Chairman**<br>*Naples* |

PDF created with pdfFactory trial version www.pdffactory.com