UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80937-CIV-MARRA

YOVANY GONZALEZ,
      Plaintiff,

vs.

WELLS FARGO BANK, N.A.;
f/k/a WACHOVIA BANK, N.A.;
WELLS FARGO & COMPANY;
WELLS FARGO & COMPANY DEPENDENT TERM LIFE PLAN;
WELLS FARGO & COMPANY HEALTH PLAN;
UNITED HEALTHCARE;
UNITED HEALTHGROUP, INC.;
UNTIED HEALTHCARE SERVICES, INC. and
MEDCO HEALTH SOLUTIONS, INC.,
      Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT WELLS FARGO BANK, N.A.'S
## MOTION TO DISMISS AMENDED COMPLAINT

This matter is before the court on the defendant Wells Fargo Bank, N.A. f/k/a Wachovia Bank, N.A.'s motion to dismiss the plaintiff's amended complaint for failure to state claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) [DE 22].  For reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff Yovany Gonzalez ("Gonzalez") was employed by Wachovia Bank, N.A., now known as Wells Fargo Bank, N.A. ("the Bank") as a mortgage consultant from 2007 to 2010.  As

---

[1] The recited facts are drawn from plaintiff's operative amended complaint [DE 20] and, for purposes of this motion, are assumed to be true and interpreted in the light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Pierre v. City of Miramar, Florida, Inc*., ___ Fed. Appx. ___, 2013 WL 4750080 (11th Cir. September 5, 2013);  *Miyahira  v. Vitacost.com, Inc*., 715 F.3d 1257 (11th Cir. 2013).

a benefit of that employment, Gonzalez participated in the Wells Fargo & Company Health Plan and Life Plan, securing health and life insurance coverage for himself, his spouse and his children.[2]  UnitedHealthcare ("UHC") provided insurance verification for medical services under the Health Plan in which Gonzalez participated, while Medco Health Solutions ("Medco") provided insurance verification for prescription drug services.

In December 2008, Gonzalez's then four-year old daughter, Mackenzie, was diagnosed with cancer. When Gonzalez requested leave under the Family Medical Leave Act (FMLA) to attend to his daughter's emergent medical needs, the Bank initially told him it "didn't participate" in that program and threatened to fire him if he took leave.  After counsel intervened on his behalf, the Bank ultimately allowed Gonzalez to take intermittent FMLA leave. The Bank also acquiesced in his request to work from remote branch locations while he traveled with his daughter for medical treatment after initially refusing his request. In this same time frame, the Bank changed Gonzalez's compensation structure from that of a full-time salaried employee to that of an hourly paid employee.

Shortly after Wells Fargo Bank acquired Wachovia, new management approached Gonzalez suggesting that he simply quit his position and take an unpaid leave of absence, instead of using intermittent FMLA leave, until his daughter's medical situation was resolved. Gonzalez refused. The Bank then asked Gonzalez to forego taking any additional intermittent leave, and he again refused.

---

[2] The Bank contends that the Wells Fargo & Company Life Plan and Health Plan are established under and controlled by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C § 1001 *et seq*.  Although plaintiff does not stipulate to the applicability of ERISA, he does not challenge this contention and, indeed, asserts a cause of action for interference with protected rights under ERISA (Count 3).

At or about this same time frame, the Bank reassigned Gonzalez to its downtown West Palm Beach office, where he reported to branch manager Shaskia Rodriguez.  At the outset, Ms. Rodriguez warned Gonzalez to "be careful," because Wells Fargo "was looking for reasons to get rid of him."   Rodriguez assisted Gonzalez in entering time records for work performed in previous time periods, as required by newly implemented changes in the Bank's time-entry policy.  Ms. Rodriguez encouraged him to rely on his "best recollection" in reconstructing his time, and then inputted the time for him on the basis of that reconstruction.

In late 2009, the Bank accused Gonzalez of receiving over $9,000 in compensation overpayments, and then unilaterally deducted $1,500 from his deposit account under a claimed "right to offset."  After Gonzalez's attorney again intervened, the Bank dropped its demand for additional payments but did not refund the $1,500 deduction.

In July, 2010, Gonzalez learned that his daughter needed surgery for removal of a tumor, and he began making arrangements to visit Memorial Sloan-Kettering Cancer Center (Sloan-Kettering) in New York for treatment.  However, on August 3, 2010, just days prior to his scheduled departure, the Bank fired Gonzalez for falsification of time records. A few weeks later, on August 23, 2010, the Bank filed a Form U-5 Uniform Termination Notice for Securities Industry Registration with the Financial Industry Regulatory Authority (FINRA) and advised Gonzalez that his securities registration through Wells Fargo Advisors, LLC Wealth Brokerage Services had been terminated. The Form U-5 identified the reason for Gonzalez's termination as "conduct unrelated to the business of Wells Fargo Advisors," and specifically, "ent[ry] of inaccurate time information into the firm's time management system."

After arriving in New York, Gonzalez waited for hours while Sloan-Kettering attempted, unsuccessfully, to verify insurance coverage through United Healthcare (UHC). According to Gonzalez, his coverage was in place through the end of August, 2010, and UHC's failure or refusal to verify this coverage for Mackenzie caused her to miss scheduled doctor's visits, chemotherapy, radiation treatments and prescription drug refills.

By October, 2010, Gonzalez learned that his daughter's cancer had metastasized, and the surgery was never scheduled. His daughter died on March 2, 1011 at the age of six.

Gonzalez later applied for death benefits under his Wells Fargo Dependent Term Life Plan, but Minnesota Life Insurance Company, the Claims Administrator, advised that the policy on Mackenzie had been cancelled for lack of payment.  Eight months later, on April 7, 2011, the Bank sent Gonzalez a notice advising of his possible eligibility for continuation of life insurance benefits conditioned upon his contact with Minnesota Life "within 31 days of [the] coverage end date."

In July 2011, Gonzalez secured new employment with Chase Bank.  He asked Chase to sponsor him for a securities registration with the FINRA in order to become licensed once again to sell securities, but Chase declined citing the grounds listed on the Wells Fargo Form U-5 termination notice.

 On August 3, 2011, Gonzalez's attorney delivered a Technical Assistance Questionnaire ("TAQ") to the Florida Commission on Human Relations ("the Commission" or "FCHR"). In the TAQ, Gonzalez expressed his belief that Wells Fargo terminated his employment to avoid the inconvenience and disruption caused by accommodation of his intermittent leave requests, as well as the expense of treatment of his daughter, which by then had run into "several millions of

dollars." The Commission accepted the TAQ as a formal administrative complaint.  On February 6, 2012, the Commission issued a 180-day letter indicating that it had not yet completed its investigation.  The letter stated that Gonzalez had the option of proceeding to file suit in a court of competent jurisdiction, filing an administrative petition before the Florida Division of Administrative Hearings or waiting for the Commission to conclude its investigation. This notice identified the filing date of Gonzalez's complaint as "8/3/2011," and the date of harm as "8/3/10." On April 11, 2012, the Commission issued its formal determination of cause, expressly finding that all "timelines and [] jurisdictional requirements have been met," and that "reasonable cause exists to believe that an unlawful employment practice occurred."

On August 2, 2012, plaintiff filed a civil action in Florida state court against the Bank, pleading associational disability discrimination under the Florida Civil Rights Act (FCRA), as well as common law claims of defamation and breach of fiduciary duty.  Gonzalez alleged that the Bank discriminated against him in violation of the FCRA by firing him to avoid the need to further accommodate his work schedule because of his daughter's illness, and to avoid the additional expense associated with her treatment. On September 4, 2012, Wells Fargo filed a petition to remove the case to this court, alleging that Gonzalez's claims arose under the Employee Retirement Income Security Act (ERISA) and were therefore removable under 28 U.S.C. §1331 and §1441.

Gonzalez thereafter filed an amended complaint identifying the following claims[3]:

---

[3] The Amended Complaint also adds  new defendants – Wells Fargo & Company, Wells Fargo & Company Dependent Term Life Plan, Wells Fargo & Company Health Plan, United Healthcare, United Healthgroup, Inc., Healthgroup, Inc., United Healthcare Services, Inc. and Medco Health Services. However, the court file does not reflect that any of the newly added defendants have been served with process or have otherwise filed appearances in this case .

(1) the Bank violated the Florida Civil Rights Act (FCRA), § 760.01-11, Florida Statutes, by engaging in "associational disability discrimination," and specifically, by firing him in order to avoid (i) the need to further accommodate him in light of his daughter's illness (ii) disruptions or distractions occasioned by his caretaker responsibilities, and (iii) additional expenses associated with treatment of his daughter;

(2) the Bank violated the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615, by firing him in retaliation for exercising his right to take intermittent leave to attend to the medical needs of his daughter;

(3) the Bank violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132, 1140,  by interfering with his entitlement to collect benefits under his Wells Fargo Health Plan,  and specifically, by firing him to evade the further obligation to pay benefits for his daughter's mounting medical expenses;

(4) the Bank defamed him by filing a Form U-5 with the Financial Industry Regulatory Authority (FINRA) which falsely accused Gonzalez of theft by claiming that he entered inaccurate time records, a direct attack on his personal and professional character;

(5) the Bank (as Plan Administrator)  and  the Life Plan breached their fiduciary duties under ERISA, 29 U.S.C. §1132,  by failing to give timely notice of his life insurance conversion rights before or during the 31-day conversion period, causing Gonzalez and his family to lose valuable death benefits for Mackenzie and to lose coverage for the remainder of the family;

(6) the Bank (as Plan Administrator) and the Health Plan breached their fiduciary duties under ERISA, 29 U.S.C. § 1132, by failing to give timely notice of his health insurance conversion rights at the time of termination, causing Gonzalez to suffer the loss of "time and effort [needed] to obtain the information," as well as "increased medical expenses;"

(7) the Bank converted money belonging to Gonzalez by unilaterally misappropriating $1,500 from his employee deposit account as a purported "set off" of a mistaken compensation overpayment;

(8) United Health Care and Medco negligently failed to verify and affirm the existence of health and prescription drug insurance coverage through the end of August 2010 for the benefit of Gonzalez's daughter, causing a disruption in delivery of necessary medical care and loss of medical and prescription drug services that should have been provided to Mackenzie.

[DE 20]. In its current motion to dismiss, the Bank argues that Counts 1 through 5 and Count 8 must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). More specifically, the Bank contends:

(1) Count 1, alleging a FCRA violation based on "associational disability" discrimination, (a) fails to show satisfaction of conditions precedent, where plaintiff's TAQ/FCRA complaint, filed August 3, 2011, was not timely filed within 365 days of Gonzalez's termination date, August 3, 2010; (b) is preempted by ERISA as a claim which "relates to" an ERISA plan to the extent it asserts a claim for "expense-avoidance" associational disability discrimination; and (c) fails to state a claim for

either "distraction" or "accommodation" associational disability discrimination, where the complaint does not allege sufficient facts to support the "distraction" allegation and because, in the first instance, an employer has no obligation under the FCRA to make scheduling accommodations for disabled relatives or dependents of nondisabled employees;

(2) Count 2, alleging unlawful retaliation for exercise of protected rights under the Family Medical Leave Act,  fails to allege sufficient facts showing the causal link between the alleged adverse action (discharge) and the protected activity (exercise of intermittent FMLA leave);

(3) Count 3, alleging interference with ERISA rights, fails to adequately allege exhaustion of administrative remedies;

(4) Count 4, alleging common law defamation, fails to allege sufficient facts to overcome the qualified reporting privilege attached to Form U-5 filings, where it fails to allege a predicate for  "express malice;"

(5)  Count 5, alleging a violation of the Bank and Life Plan's fiduciary duties and statutory obligations under the Consolidated Omnibus Budget Reconciliation Act (COBRA), by reason of defendants' alleged failure to give timely notice of Gonzalez's alleged *life* insurance conversion rights, fails to state a claim because COBRA applies only to group *health* insurance plans;

(6) Count 8, alleging negligence claims against UHC and MEDCO, by reason of their alleged failure to timely and accurately confirm coverage for Mackenzie, are preempted under ERISA as claims which "relate to" an ERISA plan.

## II. DISCUSSION

### A.  LEGAL STANDARD

A court may dismiss a complaint under Fed. R. Civ. P. 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).  Under the *Twombly* "plausibility" standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

In determining the sufficiency of a complaint under a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Rehberg  v. Paul*, 611 F.3d 828, 835 n. 1 (11th Cir. 2010); *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223 (11th Cir. 2008).  However, the court need not accept legal allegations unsupported by factual allegations, *Iqbal* at 678; *Allah El v. Avesta Homes, LLC*, ___ Fed. Appx. ___, 2013 WL 2321421 (11th Cir. 2013), legal conclusions couched as factual allegations, *McGee v. JP Morgan Chase Bank, NA*, ___ Fed. Appx. ____, 2013 WL 2321782 (11th Cir. 2013), or conclusory factual allegations devoid of any reference to particular acts or events.  *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979). The complaint must contain "more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555.

### III.    DISCUSSION

### A.  Florida Civil Rights Act Disability Discrimination

### 1.  Exhaustion of Administrative Remedies

Gonzalez filed his charge with the Florida Commission on Human Rights (FCHR) on August 3, 2011, following termination of his employment on August 3, 2010.  According to the Bank, Gonzalez failed to timely file his charge of disability discrimination "within 365 days of the alleged violation" with the appropriate state agency prior to bringing suit under the Florida Civil Rights Act, thereby defeating his FCRA claim for failure to demonstrate satisfaction with all conditions precedent to suit.

To bring a suit for discrimination under the FCRA, Title VII, the ADA or the ADEA, a plaintiff first must exhaust administrative remedies.  To exhaust remedies, the plaintiff must timely file a discrimination charge with the appropriate commission.  *See Poulsen v. Publix Super Markets, Inc*., 302 Fed. Appx. 906 (11th Cir. 2008) and cases cited *infra.*  In this case, plaintiff alleges that he filed his initial "Technical Assistance Questionnaire" (TAQ)  with the Florida Commission on Human Rights on August 3, 2011; that the Commission accepted and processed the TAQ as a formal complaint pursuant to statute; that the Commission issued a "180-day" letter on February 6, 2012; that the Commission issued its formal "cause" determination on April 12, 2012, explicitly finding that "all timeliness and jurisdictional requirements have been met" and that "reasonable cause" existed to believe an unlawful employment practice had occurred. Plaintiff also attaches a copy of the Commission's formal cause determination as an exhibit to his complaint [DE 20-6].

Recognizing that a motion to dismiss tests the legal sufficiency of pleadings contained "within the four corners of the complaint," *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010), and is not intended to determine issues of ultimate fact, the court concludes, based on the pleadings before it, that the FCHR's April 12, 2012 notice of probable cause attached to plaintiff's complaint demonstrated FCHR's satisfaction with Gonzalez's timely filing of his initial administrative complaint. This necessarily indicates compliance with the required condition precedent to suit under §760.11, Florida Statutes, and Gonzalez sufficiently pled this compliance in his complaint. At this stage of the proceeding, it is not appropriate for the court to go behind Gonzalez's pleadings to reweigh the administrative agency's treatment of his initial administrative complaint as timely.[4] *See Maynard v. Taco Bell of America, Inc.,* 117 So.3d 1159 (Fla. 2d DCA 2013) ("[T]he determination of whether [an administrative] complaint is timely filed rests with FCHR. Accordingly, as long as [plaintiff] sufficiently alleged timely compliance with the requisite condition precedent, it is not part of the trial court's consideration to reweigh that timeliness determination on a motion to dismiss.").

The administrative process is properly viewed as a condition precedent to a discrimination suit under the FCRA, *Martinez v Abraham Chevrolet-Tampa, Inc.,* 891 So.2d 579 (Fla. 2d DCA 2004) as it is under Title VII. *Fouche v Jekyll Island-State Park Authority*, 713 F.2d 1518 (11th

---

[4] Section 760.11(1) provides that when a complaint is filed with the FCHR within 365 days of an alleged violation, FCHR will notify the person who allegedly committed the violation and that person may file an answer within twenty-five days. Section 760.11(3) provides that FCHR has 180 days from the date the complaint is filed to investigate and determine if there is probably cause to believe that a violation has occurred. Under Section 760.11 (8), if FCHR fails to make such a determination within 180 days, the aggrieved person may proceed as though FCHR made such a finding by filing a lawsuit or requesting an administrative hearing.

Cir. 1983), and is a condition subject to equitable modification.  *See generally Chappell v. Emco Machine Works Co.*, 601 F.2d 1295 (5ᵗʰ Cir. 1979).  Because equitable tolling may be available to plaintiff, the Bank's challenge to the legitimacy of the FCHR's finding on the timeliness of his administrative complaint raises issues outside the four corners of the complaint which are not properly decided on a motion to dismiss (e.g. equitable circumstances that the Commission may have considered in accepting the complaint as timely).

In addition, while there may be an  issue as to the degree of deference owed an agency's *positive* finding on the timeliness of an initial administrative complaint in the first instance, *compare Boudreaux v Baton Rouge  Marine Contracting Co*., 437 F.2d 1011, 1014 n. 6 (5ᵗʰ Cir. 1971)(dicta)(questioning whether positive timely finding by EEOC should ever be open to reconsideration by court), *criticized on other grounds, Ingram v. Steven Robert Corp*., 547 F.2d 1260 (5ᵗʰ Cir. 1977) *with Wade v. Sec'y of the Army*, 796 F.2d 1369 (11ᵗʰ Cir. 1986)(recognizing that *adverse* agency finding on timeliness of pre-suit administrative charge is subject to independent judicial review and outlining relevant criteria for judicial inquiry),  this issue, similarly, is not properly before the court at the motion to dismiss stage of the proceeding.

Plaintiff's complaint adequately alleged compliance with all conditions precedent to suit, including exhaustion of administrative remedies before the Commission, and he supported this allegation with written documentation of the Commission's finding on timeliness.  Even if the court were to ultimately conclude that independent judicial review of the Commission's positive timeliness finding is in order – an issue on which the court here expresses no opinion – it is inappropriate to determine the issue at this stage of the proceeding without a relevant evidentiary

predicate since the court's inquiry is necessarily confined to the four corners of the plaintiff's complaint.

The court shall accordingly deny the Bank's motion to dismiss the complaint based on the alleged untimeliness of plaintiff's initial administrative complaint and corresponding failure to properly exhaust all administrative remedies. This order shall be without prejudice for defendant to renew the administrative remedy exhaustion issue at a later stage of the proceeding.

## 2.  Failure to State a Claim

The Bank also moves to dismiss the plaintiff's associational disability discrimination claims, asserted under the Florida Civil Rights Act, for failure to state a claim upon which relief can be granted.  Plaintiff does not assert an associational disability claim under federal law.

The analysis of a disability discrimination claim under the FCRA is identical to that employed under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"). *Albra v Advan, Inc.,* 490 F.3d 826, 835 (11th Cir. 2007); *Byrd v. BT Foods, Inc*., 948 So.2d 921, 925 (Fla. 4th DCA 2007).  The ADA generally prohibits employers from discriminating against a qualified individual on the basis of a known physical or mental disability.  42 U.S.C. § 12112(a). Under 42 U.S.C. § 12112(b)(4) of the ADA, an employer is further prohibited from discriminating against a qualified individual "because of the known disability of an individual with whom [the employee] is known to have a relationship or association."  See also 29 C.F.R. § 1630.8 [An employer may not made a decision based on "belie[f] that the [employee] would have to miss work" in order to take care of a disabled person].

In order to establish a *prima facie* case of "associational disability discrimination" under this provision, a plaintiff must show:

(1) the plaintiff was subjected to an adverse employment action;

(2) the plaintiff was qualified for the job at the time of the adverse employment action;

(3) the defendant knew that a member of the plaintiff's family was disabled;

(4) the adverse employment action occurred under circumstances which raise a reasonable inference that the disability of the relative was a determining factor in the employer's decision.

*Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1231 (11th Cir. 1999), following *Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir. 1997); *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011).  The fourth element of the *Dan Hartog* test, which requires the plaintiff to produce evidence that he was discriminated against because of the disability of a person with whom he has a relationship or other association, potentially encompasses three categories of claims:  (1) "expense-avoidance," e.g. where an employee suffers an adverse action because a spouse or child is covered by the company's health plan and has a disability that is costly to the employer;  (2) "disability by association," e.g. where the employer fears that the employee is  likely to develop the disability due to exposure to or a genetic component of the ailment; and (3) "distraction, " e.g., where the employee is somewhat inattentive at work because his spouse or child  has a disability that requires his attention, yet is not so inattentive that he would need an accommodation to perform to  his employer's satisfaction. *Larimer v. International Business Machines Corp.,* 370 F.3d 698, 700 (7th Cir.), *cert. den*., 543 U.S. 984 (2004).

In a fourth category of claim, an employer may also be liable for associational disability discrimination where it terminates an employee based on an unfounded assumption regarding the

employee's need for future leave in order to care for a disabled person.  *Tyndall v. National Educ. Centers, Inc. of California,* 31 F.3d 209 (4th Cir. 1994); 29 C.F.R § 1630 (employer may not make decisions based on the "belie[f] that the [employee] would have to miss work" in order to take care of a disabled person).  On the other hand, an employer's decision to terminate an employee with a disabled relative is within legal bounds where it is based on an established record of past absences, or a clear indication of the employee's intent to take additional time off to care for the disabled relative.  *Tyndall* at 214;  *Hilburn a*t 1232.  *See also Magnus v. St. Mark United Methodist Church*, 688 F.3d 331 (7th Cir. 2012); *Erdman v. Nationwide Ins. Co*, 582 F.3d 500 (3d Cir. 2009).

Assuming without deciding that the Florida Civil Rights Act -- which contains no comparable express prohibition against associational disability discrimination -- is properly interpreted to encompass such claims, the court examines the sufficiency of Gonzalez's tripartite associational disability discrimination theory, as outlined in ¶56 of his Amended Complaint:

> Wells Fargo terminated Gonzalez to avoid the need to further accommodate him in light of his daughter's illness, to avoid any disruptions or distractions occasioned by his caretaker responsibilities, and to avoid incurring additional expense associated with her treatment.

[ DE 20].

### a. "Expense-avoidance" disability discrimination

The Bank first challenges plaintiff's "expense–avoidance" theory of associational disability discrimination on the ground it is preempted by ERISA. The court agrees, and shall accordingly dismiss this distinct prong of the plaintiff's FCRA claim with prejudice.

There are two strands of ERISA preemption: (1) express preemption under ERISA § 514(a), 29 U.S.C. § 1144(a), also known as defensive preemption, and (2) complete or "super" preemption due to a conflict with ERISA's exclusive remedial scheme as set forth in ERISA § 502(a), 29 U.S.C. § 1132(a). *Connecticut State Dental Ass'n. v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir. 2009); *Fossen v. Blue Cross and Blue Shield of Montana, Inc.*, 660 F.3d 1102 (9th Cir. 2011), *cert. den.*, 132 S. Ct. 2780 (2012). Complete preemption derives from ERISA's civil enforcement provision, §502(a), which has such "extraordinary" preemptive power that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Anthem Health* at 1344. It is narrower than, and differs from, defensive preemption because it is jurisdictional in nature, where defensive preemption functions as an affirmative defense. *Id.* In this case, the Bank implicitly invokes both strands, without explicitly articulating this dichotomy.

**(i)       express ERISA preemption**

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). State laws include "all laws, decisions, rules, regulations or other State action having the effect of law." 29 U.S.C. §1144(c)(1). In determining whether ERISA's express preemption clause applies to Gonzalez's claim, the court  addresses two issues: (1) whether the Wells Fargo Health Plan qualifies as an ERISA "employee benefit plan," and (2) whether plaintiff's expense-avoidance disability discrimination claim "relates to" that  plan. *See generally Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48, 107 S. Ct. 1549, 95 L.Ed. 2d 39 (1987) (ERSIA's preemption clause reaches not

only those laws specifically designed to affect employee benefit plans, but also common law causes of action that "relate to" employee benefit plans).

The plaintiff does not contest the Bank's claim that the subject Health Plan qualifies as an "employee benefit plan" within the meaning of ERISA. The analysis here therefore focuses on the question of whether plaintiff's claim "relates to" that plan. A law "relates" to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S. Ct. 2890, 77 L.Ed.2d 490 (1983).

Plaintiff's "expense-avoidance" associational disability discrimination claim is based on the allegation that the Bank's decision to terminate Gonzalez was driven by a desire to avoid paying costly medical benefits associated with anticipated future cancer treatment of his daughter. Where an employee alleges that a principal reason for his discharge is his employer's desire to avoid paying benefits due under an ERISA plan, that claim necessarily "relates" to the plan and is expressly preempted by ERISA, even where it states distinct state tort or contract theories and seeks compensatory or punitive damages not available under ERISA. *See e.g. Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 111 S. Ct. 478, 112 L.Ed.2d 474 (1990) (state law claims for wrongful termination based on employer's desire to avoid making contributions to pension fund subject to express and implicit ERISA preemption); *Altshuler v. Animal Hospitals, Ltd.*, 901 F. Supp. 2d 269 (D. Mass. 2012) (express ERISA preemption of claims for retaliatory discharge in violation of public policy and state statute where claims arose from same nucleus of facts regarding employee's disagreement with employer's administration of employee benefit plan).

In short, the plaintiff's expense-avoidance disability discrimination claim effectively charges the Bank with intent to interfere with Gonzalez's attainment of benefits under an ERISA-regulated health plan. In this sense, it clearly "relates" to the administration of plan benefits, and as such,  is expressly  preempted under ERISA.  *See e.g. Jones v. LMR International, Inc*., 457 F.3d 1174 (11th Cir. 2006) (state law claims for fraud, breach of contract, civil theft, unjust enrichment, and negligence arising out of cancellation of employees' health insurance held "related to" and preempted by ERISA); *Parkman v. Prudential Ins. Co. of America,* 439 F.3d 767, 771 (8th Cir. 2006) (state law fraud claim based on insurer's mishandling of claim for benefits preempted by ERISA).

### (ii.)    complete ERISA preemption

Section 510 of ERISA prohibits the "discharge of a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled" ERISA § 510, 29 U.S.C. §1140.  "Congress enacted this section to prevent unscrupulous employers from discharging or harassing their employees in order to prevent them from obtaining their statutory or plan-based rights." *Zipf v. American Telephone and Telegraph Co,* 799 F.2d 889 (3d Cir. 1986). ERISA § 510 is enforceable under ERISA § 502(a), which provides in pertinent part:

> A civil action may be brought –
>
> (1) by a participant or beneficiary - …
>     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; …
>
> (2) by a participant beneficiary or fiduciary   (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress

>such violations or (ii) to enforce any provisions of this subchapter or the
>terms of the plan…

29 U.S.C. §1132(a).

In *Aetna Health Inc v. Davila*, 542 U.S. 200, 210, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004), the Supreme Court set forth the following two-part test for ERISA complete preemption under § 502(a): (1) whether the plaintiff could have brought his claim under ERISA's civil enforcement mechanism, § 502(a), and (2) whether no other legal duty supports the plaintiff's claim. Because the *Davila* test is framed in the conjunctive, a state law cause of action is completely preempted by §502(a) only if both prongs of the test are met. *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011); Fossen *v. Blue Cross and Blue Shield of Montana, Inc*., 660 F.3d 1102 (9th Cir. 2011).

In *Davila,* the plaintiffs, a participant and a beneficiary, sued their respective ERISA plan administrators in state court alleging violations of a state health care liability law based on an alleged failure to exercise "ordinary care" in denying the plaintiffs' claims for health care benefits.  Observing that the claims were based solely on the denial of benefits under the plan, and that defendant's only relationship with plaintiffs was as administrator of their employer's ERISA plan, the *Davila* court concluded, first, that the plaintiffs could have brought their claims under ERISA §502(a)(1)(B) because they "complain[ed] only about denials of coverage promised under the terms of ERISA regulated employee benefit plans" and could have resorted to their remedies under ERISA by filing a claim for benefits  and/or seeking a preliminary injunction. *Davila*, 542 U.S. at 211-12, 124 S Ct. at 2497.  Second, the court  assessed  whether  the  duty  on  which  the  plaintiffs'  claims  was  based  arose independently of the plan.  Although the state law imposed a distinct duty on managed care

entities to use "ordinary care" in making health care decisions, the court found no "independent duty" where the administrators' liability on the state law claims "derive[d] entirely from the particular rights and obligations established by the benefit plans." and "liability would exist [ ] only because of [the defendants'] administration of ERISA-regulated benefit plans." *Id* at 213, 124 S. Ct. at 2498.

Employing the *Davila* test here, the first inquiry is whether Gonzalez, "at some point in time, could have brought [his] [expense-avoidance disability discrimination] claim under ERISA § 502(b)(1)(B)". *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496. Clearly he could have and in fact did so, asserting a claim for interference with protected ERISA rights in this action under 29 U.S.C. §1140. Section 1140 provides in pertinent part:

> It shall be unlawful for any person to discharge …. or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan…or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan…..

Put another way, Gonzalez's claim that his employment was terminated solely for the purpose of evading future responsibility for health insurance benefits is essentially a benefits deprivation claim falling squarely within the scope of §§ 510 and 502 of ERISA.

The court must next determine whether the plaintiff's state law expense-avoidance FCRA claim "arises independently of ERISA or the plan terms." *Davila,* 542 U.S. at 212, 124 S. Ct. 2488. That is, the court must determine "whether an independent legal duty .. is implicated by [the] defendant's actions." *Id* at 210, 124 S. Ct. 2488. Although nominally plaintiff's claim is premised on a state statutory cause of action for disability discrimination which is separate from ERISA, he succeeds on the state law "expense avoidance" disability discrimination claim only to

the extent he establishes the Bank's discharge decision was motivated by a benefits avoidance strategy, i.e. that the plan administrator improperly interfered with the administration of an ERISA-regulated benefit plan by discharging him for the purpose of "interfering with the attainment of any right to which [Gonalez] may become entitled" under the plan in violation of 29 U.S.C. §1140.

Because the plaintiff's "expense avoidance" disability discrimination claim exists only because of the Bank's alleged improper administration of an ERISA regulated benefit plan, the court concludes the plaintiff's FCRA expense-avoidance claim is not based on an "independent legal duty" as that term is defined in this context. *See e.g. Ingersoll-Rand, supra* (termination motivated by employer's desire to prevent pension from vesting did not identify independent duty but rather was based on right expressly guaranteed by ERISA § 510 and exclusively enforced by § 502(a)); *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005) (ERISA comprehensive scheme of civil remedies preempted state statutory claims arising from denial of benefits for emergency care, where factual basis of complaint was denial of benefits to participant under ERISA-regulated health plan); *Tingey v. Pixley-Richards West, Inc*., 953 F.2d 1124 (9th Cir. 1992) (ERISA preempted state law wrongful termination claim based on allegation that employer fired participant to avoid cost of paying medical benefits for son born with spina bifida); *Felton v. Unisource Corp*., 940 F.2d 503 (9th Cir. 1991) (ERISA preempted state handicap discrimination claim based on termination following medical leave of absence for lung cancer); *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674 (3d Cir. 2000) (ERISA preempted state disability discrimination claim based on allegation that employer terminated worker to avoid paying benefits to his dependents). *See also Sorosky v Burroughs Corp.,* 826

F.2d 794 (9th Cir. 1987) (ERISA preempted state law breach of contract/wrongful discharge claims to extent derived from allegations relating to interference with employee's right to retirement benefits under employee benefit plan).

For the foregoing reasons, the court concludes that Gonzalez's state law FCRA claim for "expense-avoidance" associational disability discrimination is subject to express and complete ERISA preemption, and shall accordingly be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### b. "distraction" disability discrimination

The Bank does not claim that the "distraction" prong of the plaintiff's associational disability discrimination FCRA claim is preempted by ERISA, but rather simply attacks the sufficiency of the factual allegations asserted in support of this claim. Having carefully reviewed the allegations of the complaint, the court finds the allegations of "distraction" theory disability discrimination sufficient to satisfy the *Twombly* plausibility standard.

In addition to alleging that the Bank's decision to fire Gonzalez was motivated in part by a desire to avoid inefficiencies attending to his "distraction" in the workplace precipitated by worry over the health of his child, the complaint also makes specific reference to at least one manner in which the distraction manifested itself, to wit, Gonzalez's  time keeping efforts: "On many occasions, Gonzalez was unable to record time when he was working, with bank approval, from a remote location and/or when he was focused on taking care of Mackenzie." [DE 20] [Amended Complaint ¶ 18].  Plaintiff's subsequent efforts to submit reconstructed time slips, with the assistance of his branch manager, were ultimately intertwined with Bank's stated reason for his termination.

The court finds these allegations sufficient to state a claim plausible on its face for "distraction" associational disability discrimination on theory that Gonzalez labored under a mental distraction related to his child's health which caused him to be inattentive at work yet not so inattentive that he needed accommodation to perform his job to his employer's satisfaction. The defendant's motion to dismiss the "distraction" strand of plaintiff's associational disability discrimination claim under FCRA shall therefore be denied.

### 3.  Unfounded Assumption Regarding  Future Leave Needs

Finally, the Bank contends that the remainder of plaintiff's associational disability discrimination claim must be dismissed on the ground it effectively charges the Bank with failure to accommodate a non-disabled employee's need to care for a disabled family member, an obligation not imposed under the ADA.   The Bank correctly observes that an employee who cannot meet the attendance requirements of his job is not protected by the associational disability discrimination provision of the ADA, 29 U.S.C. § 12112 (b) (4). *See e.g. Bimberg v. Elkton-Pigeon-Bay Port Laker Schools,* 512 Fed. Appx. 462 (6th Cir. 2013); *Magnus v. St. Mark United Methodist Church,* 688 F.3d 331 (7th Cir. 2012); *Rocky v. Columbia Lawnwood Regional Medical Center,* 54 F. Supp. 2d 1159 (S. D. Fla. 1999).

However, the plaintiff's complaint in this case does not allege termination resulting from past absences or a clear indication of future absences; rather, it alleges that the Bank's decision to terminate Gonzalez was motivated in part by desire to avoid "the need to *further* accommodate [Gonzalez] in light of his daughter's illness."   [emphasis added]   Read as a whole, and specifically with reference to the chronology of events attending the Sloan-Kettering trip in August 2010, this allegation is liberally interpreted, in the light most favorable to plaintiff, to

adequately state a claim for unlawful associational disability discrimination based on an "unfounded" employer assumption or perception regarding an employee's need for future leave to care for a disabled family member.

Notably, the complaint contains no allegation that Gonzalez submitted a leave request, or otherwise gave "clear indication" of an intent to take future leave in order to attend his daughter's medical treatment at Sloan-Kettering.  Without such evidence or allegations, the fact the Bank terminated him a few days before his scheduled departure for New York is reasonably susceptible to the  inference that the decision to discharge him was motivated by an unfounded assumption regarding his need for future leave to care for his disabled child, particularly when read in conjunction with other allegations of the complaint showing: (1) the  employer's knowledge of the child's serious condition and impending surgery;  (2) the employer's  history of resistance to Gonzalez's use of intermittent family leave to attend to his child's medical needs (initial refusal to allow leave and  subsequent suggestion that he take administrative leave in lieu of intermittent leave),  and (3)  the employee's past use of intermittent FMLA leave.   Read as a whole, the court finds these allegations sufficient to state a plausible claim for an "unfounded assumptions" style of associational disability discrimination claim actionable under the ADA or FCRA.

## B.  FMLA Retaliation

To state a *prima facie* case of retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2615(a)(2), a plaintiff must show:  (1) he engaged  in statutorily protected activity under the FMLA; (2) he suffered an adverse employment action, and (3) there is a causal connection between the two. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231 (11th Cir. 2010);

*Walker v. Elmore County Bd of Education,* 379 F.3d 1249 (11th Cir. 2004).   The causal

connection is satisfied if plaintiff shows that the protected activity and adverse action were not

wholly unrelated, which may be shown where the decision-maker was aware of the protected

conduct at the time of the adverse employment action. *Id.* Where the temporal proximity between

a protected activity and adverse action is unduly suggestive, this also may be sufficient, standing

alone, to create an inference of causality. *Lichtenstein v. University of Pittsburgh Medical*

*Center,* 691 F.3d 294 (3d Cir. 2012).

Here, the Bank contends that the plaintiff's FMLA retaliation claim fails to satisfy the

pleading standards of *Twombly* where plaintiff alleges only that he was terminated *after* he took

FMLA intermittent leave, not *because* he exercised the leave, and where the allegations of

complaint are otherwise inadequate to support an inference of causation.

The court disagrees. The plaintiff's complaint in this case alleges a variety of direct and

indirect evidence suggestive of retaliatory motive, including allegations that Gonzalez took a

series of intermittent FMLA leaves during the course of his daughter's cancer treatment, which

was first diagnosed in December 2008; that the Bank initially resisted his request for FMLA

leave, stating the company did "not participate in that program" and threatening to fire him if he

took leave; that the Bank later asked him to quit and take administrative leave in lieu of

intermittent leave;  that he was transferred to a relatively inactive branch location in West Palm

Beach after exercising intermittent leave, where a sympathetic branch manager warned him to

"be careful" because the Bank was "looking for reasons to get rid of him;"  and that the Bank

ultimately terminated him on August, 2010 following some eighteen months of intermittent

FMLA leave use.  Construed in the light most favorable to plaintiff, the court finds these

allegations sufficiently satisfy the plausibility requirement of *Iqbal* and *Twombly* as related to the causation element of the FMLA retaliation claim. *See e.g. Lichtenstein v. University of Pittsburgh Medical Center* 691 F.3d 294 (3d Cir. 2012); *Mayorga v. Sonoco Products Co.*, 2013 WL 1792554 (D.N.J. 2013).

### C. ERISA Interference

The defendant asserts, and the plaintiff does not seriously contest, that the complaint fails to sufficiently allege exhaustion of administrative remedies as a condition precedent to assertion of the ERISA interference claim. Rather than dismiss this claim, however, the court has determined to exercise its discretion and grant plaintiff's request to stay the claim pending his pursuit and completion of administrative review. *See generally Lindemann v Mobil Oil Corp.*, 79 F.3d 647 (7th Cir. 1996) (decision on whether to grant summary judgment as opposed to staying ERISA interference claim based on failure to exhaust administrative remedies is discretionary with trial court).

### D. Defamation

The defendant seeks dismissal of the defamation claim for failure to state a claim on which relief can be granted on the theory it is barred as a matter of law by either an absolute or qualified reporting privilege attaching to Form U-5 filings. It is premature at this stage of the proceedings and on the limited record to rule on this defense. As a result, the court shall reserve ruling on whether an absolute or qualified privilege applies, *compare Rosenberg v. MetLife*, *Inc.,* 8 N.Y.3d 359, 834 N.Y.S.2d 494 (2007) (finding absolute privilege applicable to statement made

by employer on NASD employee termination notice)  with *Eaton Vance Distributors Inc. v Ulrich,* 692 So. 2d 915 (Fla. 2d DCA 1997) (finding qualified privilege attaches to Form U-5 statements).  The court will deny the motion to dismiss without prejudice to renew the issue at the summary judgment stage.

## E.  COBRA (Life insurance) Conversion Coverage

Gonzalez does not challenge the Bank's assertion that COBRA insurance conversion notice requirements are inapplicable to life insurance. The court shall accordingly dismiss this claim with prejudice.  *Cf. Austell v. Raymond James & Associates*, *Inc*., 120 F.3d 32 (4th Cir. 1996) (COBRA covers plans paying for diagnosis, cure, mitigation, treatment or prevention of disease, and does not require employer to offer continuation coverage for disability insurance).

## F. Negligence – Medco and UHC

The court recently dismissed plaintiff's negligence claims against defendants Medco and United Healthcare for failure to timely effect service of process [DE 60], rendering the defendant's motion to dismiss these claims moot.

The court observes, however, that the negligence claims against these entities are appropriately classified as claims which "relate to" an ERISA plan, and would therefore necessarily be preempted by ERISA as an alternative basis for the dismissal of these claims with prejudice.  *See e.g. Khul v. Lincoln National Health Plan of Kansas City, Inc.,* 999 F.2d 298 (8th Cir. 1993) (state law claims based on HMO's wrongful delay in recertifying payment for heart surgery effectively constituted claims for improper processing of benefits, and as such were preempted by ERISA), *cert. den*., 510 U.S. 1045 (1994); *Cannon v. Group Health Service of Oklahoma, Inc.,* 77 F.3d 1270 (10th Cir.) (breach of contract and breach of fiduciary duty claims

arising out of death allegedly caused by health organization's delayed approval of treatment preempted by ERISA), *cert. den*., 519 U.S. 816 (1996).

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED:**

1.   The defendant's motion to dismiss the FCRA associational disability discrimination claim (Count 1) is **GRANTED** with respect to the "expense-avoidance" claim on grounds of ERISA preemption, and this strand of the plaintiff's FCRA claim is accordingly **DISMISSED WITH PREJUDICE.**  The motion to dismiss is  **DENIED** with respect to both  the "distraction" theory and "unfounded assumption" theories of associational disability discrimination.

2.   The defendant's motion to dismiss the FMLA retaliation claim (Count 2) is **DENIED.**

3.   The defendant's motion to dismiss the ERISA interference claim (Count 3) is **DENIED**. This claim shall be **STAYED** pending plaintiff's pursuit of administrative remedies and completion of administrative review.

4.   The defendant's motion to dismiss the Form U-5 defamation claim (Count 4) is **DENIED WITHOUT PREJUDICE**.

5.   The defendant's motion to dismiss the COBRA life  insurance conversion claim (Count 5) is **GRANTED,** and this claim is **DISMISSED WITH PREJUDICE**.

6.   The defendant's motion to dismiss the negligence claims against UHC and Medco based on improper delay in verification of insurance coverage (Count 8) is **DENIED as MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 27th day of September, 2013.

_____
KENNETH A. MARRA
United States District Judge

cc. all counsel